DANIEL PORTER v. NE-DA-WI PARKER.

FILED MARCH 18, 1903. No. 13,021.

Public Land: ALLOTMENT UNDER ACT OF CONGRESS: EQUITABLE ESTATE IN FEE: DESCENT. An allottee and patentee of lands in severalty pursuant to an act of congress entitled "An act to provide for the sale of a part of the reservation of the Omaha tribe of Indians in the state of Nebraska, and for other purposes," approved August 7, 1882, is seized of an equitable estate in fee, which, upon

his death before the issuance of a final patent therefor by the United States, descends to his heir or heirs at law according to the laws of inheritance of this state.

ERROR to the district court for Thurston county: GUY T. GRAVES, DISTRICT JUDGE. *Affirmed.*

*Hiram Chase,* for plaintiff in error.

*Thomas L. Sloan,* contra.

AMES, C.

The sixth section of an act of congress of August 7, 1882, providing for the allotment of certain lands in this state reserved for the Omaha tribe of Indians to the members of that tribe severally, enacts as follows: "That upon the approval of the allotments provided for in the preceding section by the secretary of the interior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal effect and declare that the United States does and will hold the land thus allotted for the period of twenty-five years in trust for the sole use and benefit of the Indians to whom such allotments shall have been made, or in case of his decease, of his heirs according to the laws of the state of Nebraska, and at the expiration of said period the United States will convey the same by patent to said Indian or his heirs as aforesaid, in fee discharged of said trust and free of all charge or incumbrance whatsoever. And if any conveyance shall be made of the land set apart and allotted as herein provided, or any contract made touching the same before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void: Provided, That, the law of descent and partition in force in the said state shall apply thereto after patents therefor have been executed and delivered." On the 29th day of December, 1884, a patent for 160 acres, or a quarter section, of such lands, reciting, in substance, the terms of the foregoing

section of the statute, was issued to one Philip Porter, a member of the tribe, in satisfaction of his right to participate in such allotment. At that time Porter was the head of a family consisting, besides himself, of his wife, the defendant, Ne-da-wi Parker, and of a daughter. After the delivery of the patent, Porter died intestate, leaving his wife and daughter surviving. Some time afterward the daughter died, also intestate and without issue. The allottee was the son of Daniel Porter, the plaintiff in this action. Since the death of her husband and daughter, the defendant has remained in the exclusive possession of the land, claiming to be lawfully entitled thereto. The foregoing matters were submitted to the district court for Thurston county upon an agreed statement of facts praying the judgment of the court whether the plaintiff or the defendant has a better right in the premises. To review a judgment in favor of the defendant, the plaintiff prosecutes a petition in error in this court.

The statute of descents and distributions of this state, so far as it affects the present inquiry, is as follows: "When any person shall die seized of any lands, tenements, or hereditaments or of any right thereto or entitled to any interest therein in fee simple or for the life of another, not having lawfully devised the same, they shall descend, subject to his debts, in the manner following: *First,* in equal shares to his children, and to the lawful issue of any deceased child by right of representation. * * * *Fourth,* if the intestate shall leave no issue, nor widow, nor father, and no brother nor sister living at his death, his estate shall descend to his mother, to the exclusion of the issue, if any, of the deceased brother or sister." Compiled Statutes, 1901, ch. 23, sec. 30 (Annotated Statutes, 4930).

When Philip Porter died intestate all his heritable estate in lands descended to his daughter as his sole heir at law, and when she died intestate and without issue all her estates of like character vested in her mother as her sole heir at law.

The first question presented, therefore, is whether by

the above quoted act of congress and the patent the al-
lottee acquired a "right or interest" in the land in fee. We
think the answer should be in the affirmative.   The lan-
guage of the act appears to us to have been aptly chosen
for the purpose of conveying the whole beneficial interest
in the lands to the allottee and his heirs at law according
to the Nebraska statute of descents, the retention of the
legal title in trust in the United States evidently being in-
tended mainly, if not solely, as a restraint upon the power
of alienation during the period limited.   The act expressly
contemplates that the lands shall be descendible to the
heirs at law of the allottee, and makes provision for the
conveyance of the legal title to such heirs in cases in
which the allottee shall die before the expiration of the
trust.   This intent is in consonance with the general prin-
ciple that equitable estates are conformed, as nearly as
may be, to the general rules of law governing legal estates,
and follow the rules respecting the latter as to their de-
scent.   2 Washburn, Real Property (6th ed.), pars. 1441,
1444, 1453; Perry, Trusts, par. 357 *et seq.*   If there was
nothing more to be said, it would seem evident that the
sole beneficial interest and right of possession of the lands
in question, and the right to the legal title to them upon
the expiration of the trust-period, have descended, under
the Nebraska statute, from the allottee, through his daugh-
ter, to the defendant.   But counsel for the plaintiff sug-
gests another inquiry to the following effect:   He con-
tends, in substance, that the inheritable character of the
estate in the lands is limited and qualified, or, perhaps,
more correctly speaking, suspended, by the circumstances
that the fee title is not to be conveyed from the United
States until the expiration of the term of the trust, and
is then to be granted to the allottee, or to such person or
persons as shall at that time be his heir or heirs at law.
According to this view, if on the expiration of the twenty-
five year period a final patent should be issued to the heir
or heirs of Philip Porter, deceased, and the plaintiff should
be then living, the estate would vest in him as the only

person answering the description in the grant. The argument is ingenious, but, in our opinion, is unsound, for the reasons already stated and because the principal purposes sought to be accomplished by the act in question would be embarrassed and postponed and in a great measure defeated by such construction. If the daughter did not inherit the premises upon the death of Philip, neither did the plaintiff inherit upon her death or upon that of his son, and the equitable title and right of possession are and will remain in abeyance until it can be ascertained who will be entitled to succeed at the date of the issuance of the final patent. In case of the previous death of the father, the estate would go to the collateral heirs of the allottee or, perhaps, escheat. Thus the evident object of the act, to induce the Indians to occupy the allotted lands in severalty, and to encourage habits of domesticity and thrift, and to promote a sense of individual proprietary right during the existence of the trust, would in this and like instances be defeated. It was, we think, for the purpose of guarding against such a contingency that the proviso enacts "that the law of descent and partition in force in the said state shall apply thereto after patents therefor have been executed and delivered." To suppose, with the plaintiff, that this proviso has reference only to the final patents issued at the termination of the trusteeship of the United States, would be to treat it as mere surplusage, because upon the issuance of such patents the entire title to the lands, legal and equitable, will be acquired in individual ownership and the laws of the state respecting descents and partition will apply to such lands as a matter of course, and independently of congressional legislation. It may be added that if the contention of the plaintiff can be upheld, he has no present interest or right of possession in the lands entitling him to maintain this action, because, according to his view, the person or persons entitled to succeed to the deceased allottee can not now be identified, and if the state statute did not operate to confer them upon the daughter and heir at law of the

latter, it is ineffectual to bestow them upon himself as present heir presumptive.

The conclusion thus arrived at renders unnecessary a discussion of the subject of dower. If the defendant acquired an estate in dower upon the death of her husband it merged in the equitable fee which she inherited upon the death of her daughter.

In our opinion, an allottee and patentee of lands in severalty, pursuant to the above mentioned act of congress, is seized of an equitable interest and estate in fee, which, upon his death before the issuance of a final patent therefor by the United States, descends to his heir or heirs at law according to the laws of inheritance of this state. *Nonshe-po v. Wa-win-ta,* 37 Ore. 213, 62 Pac. 15, 82 Am. St. Rep. 749.

It is recommended that the judgment of the district court be affirmed.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.